IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 07-CV-02000-WDM

In re:

CHRISTOPHER POWELL and
TRACY POWELL,

    Debtors,

JAMES MCCARTY,

    Plaintiff-Appellant,

v.

CHRISTOPHER POWELL and
TRACY POWELL,

    Defendant-Appellees.

## ORDER

Miller, J.

This matter is before me on Plaintiff-Appellant James McCarty's appeal of a bankruptcy judge's award of damages. Oral argument was held on this matter on Tuesday, September 2, 2008. For the reasons that follow, the decision of the bankruptcy judge is affirmed in part and reversed in part and the case is remanded for proceedings consistent with this opinion.

### Background[1]

---

[1] Unless otherwise noted, the facts are taken from the Bankruptcy Court's Order.

PDF Final

This case concerns a residential property located at 1287 Buffalo Ridge Road, Castle Rock, Colorado (the "Property"). Christopher Powell ("C. Powell") and Tracey Powell ("T. Powell") (collectively the "Powells") owned the Property under their company "Powell Homes, Inc. ("Homes"). On October 7, 2004 Plaintiff James McCarty ("McCarty") and Homes entered into a contract for the construction and purchase of the Property. The contract included allowances for design items such as cabinets, countertops, floor coverings, and window coverings so that McCarty could choose these items himself. During the construction, McCarty decided to upgrade some of the design items beyond the allowances specified in the contract. However, instead of issuing a change order to the contract, the parties agreed that McCarty would purchase the items himself and he would then be issued a credit at closing for any allowances he did not use. Operating under this agreement, between February and April 2005, McCarty purchased design items for the Property including light fixtures, flooring, cabinets, carpet, fireplace fixtures, bathroom fixtures, and window shutters. Only some of these items were installed on the Property.

At the closing on June 9, 2005, a dispute arose about the total cost of the Property and the application of the claimed allowance credits. Based on these disputes, the closing did not go through. The following day, McCarty filed a Notice of Intent to File a Lien Statement on C. Powell and Homes and a Notice of *Lis Pendens* against the Property. On June 23, 2005, McCarty filed a Statement of Lien in the amount of $35,264.76$^2$ and recorded affidavits of service with the Douglas County Clerk &

---

$^2$ In his opening brief, McCarty claims that he sought a total of $51,254.76 in damages, plus treble damages and attorney's fees and court costs. The $51,254.76

Recorder.

On September 27, 2005, the Powells filed their voluntary Chapter 7 petition. McCarty filed this adversarial action on December 7, 2005 seeking a declaration that the debt owed to him from the Property is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) because the Powells are personally liable under the Colorado Mechanic's Lien Trust Fund Statute, Colo. Rev. Stat. § 38-22-127 (the "TFS"),[3] which provides that violations of the TFS constitute theft as defined in Colo. Rev. Stat. § 18-4-401,[4] and

---

was $35,254.76 plus "an additional approximately $15,000.00 in custom shutters and window coverings purchased specifically for the property." (Docket No. 16 at 2.) I note that the "approximately $15,000.00" was actually exactly $16,000.

[3] Colo. Rev. Stat. § 38-22-127 provides:
(1) All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.
. . .
(5) Any person who violates the provisions of subsections (1) and (2) of this section commits theft, as defined in section 18-4-401, C.R.S.

[4] Colo. Rev. Stat. § 18-4-401(1) provides:
A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:
    (a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or
    (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; or
    (c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use and benefit; or
    (d) Demands any consideration to which he is not legally entitled as a

seeking treble damages and attorney's fees for theft pursuant to the Rights in Stolen Property Statute, Colo. Rev. Stat. § 18-4-405 ("RSPS").[5]

## Standard of Review

The district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. Bankr. R. 8013. I may set aside that court's findings of fact only if they are clearly erroneous. *In re Blehm Land & Cattle Co.*, 859 F.2d 137, 138 (10th Cir. 1988). Conclusions of law are subject to *de novo* review. *Id.* Mixed questions of fact and law are reviewed *de novo* if they involve primarily legal issues and for clear error if they involve primarily factual considerations. *In re Wes Dor Inc.*, 996 F.2d, 241 (10th Cir. 1993). Legal conclusions drawn from facts are reviewed *de novo*. *In re Golf Course Builders Leasings, Inc.*, 768 F.2d 1167, 1169 (10th Cir. 1985).

## Discussion

On August 30, 2007, the Bankruptcy Court issued its Order determining that: (1)

---

condition of restoring the thing of value to the other person.

[5] Colo. Rev. Stat. § 18-4-405 provides:
All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property. In any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees; but monetary damages and attorney fees shall not be recoverable from a good-faith purchaser or good-faith holder of the property.

the total amount of the design items that were part of the sales contract and were installed on the property was $16,237.95; (2) McCarty's lien was nondischargeable; (3) an award of treble damages, attorney's fees, and costs was not warranted in this case. McCarty argues that the Bankruptcy Court erred with respect to items one and three. Furthermore, the appeal brings forth two additional issues which I conclude are appropriately addressed in this Order: (1) whether a claimant must prove intent to be eligible for treble damages under the RSPS and (2) whether there was a violation of the TFS in this case. Finally, the Powells have filed a motion regarding another issue—whether McCarty's receipt of $43,500 from a bank in exchange for full release of his lien on the Property invalidates this judgment.

1. <u>Calculation of Damages</u>

The Bankruptcy Court did not award the full amount of damages claimed by McCarty ($51,254.76)[6] because it found that McCarty spent only $16,247.95 on design items that were (1) contemplated to be a part of the sales contract and (2) actually installed on the Property. First, the Bankruptcy Court declined to award damages for certain items that were not installed at the Property—McCarty either still possessed the items or it was unclear who possessed them. *See City of Westminster v. Brannan Sand & Gravel Co.*, 940 P.2d 393, 395 (Colo. 1997) ("[T]here are two limitations on the lien involved. First, it is granted only upon the property upon which the labor, services and material are bestowed or rendered; second, only to the extent of the value of the labor,

---

[6] I note that the total of the invoice totals that the Bankruptcy Court considered was $40,810.73 and not $51,254.76. The reason for the discrepancy remains unclear. As I conclude that remand is appropriate on other grounds, I shall caution the Bankruptcy Court to address the discrepancies in the numbers with particularity.

services and material *rendered upon the property*." (emphasis in original)). Second, the Bankruptcy Court also declined to award damages on any items that it found were not contemplated under the sales contract. *See C & W Elec., Inc. v. Casa Dorado Corp.*, 523 P.2d 137, 139 (Colo. Ct. App. 1974) ("'It is . . . the affirmative contractual relation of the owner of the property to the improvement made or work performed upon which the claimant's right to the lien is based . . . .'" (omission in original) (quoting *Stewart v. Talbott*,146 P. 771, 775 (Colo. 1913))); *Seracuse Lawler & Partners, Inc. v. Copper Mountain*, 654 P.2d 1328, 1330 (Colo. Ct. App. 1982) (holding that a mechanic's lien for architectural services could attach if the lien claimant participated in the enhancement of the property with the knowledge of the owner (internal citation and quotation omitted)).

McCarty argues that the Bankruptcy Court erred by requiring the purchased items to be installed on the Property. Notably, McCarty does not argue that the Bankruptcy Court erred when it determined that, to be covered by the Mechanic's Lien, the design elements must be contemplated as part of the sales contract. Citing to *Brannan*, 940 P.2d 393, McCarty claims that the Mechanic's Lien covers all items purchased "to be used" to enhance the value of the property. *Brannan* stated that "[t]he primary purpose of a mechanic's lien is to benefit and protect those who supply labor, materials, or services in order to enhance the value or conditions of another's property." 940 P.2d at 395 (citing *Thirteenth St. Corp. v. A-1 Plumbing & Heating Co.*, 640 P.2d 1130, 1134 (Colo. 1982)). Furthermore, *Brannan* stated that the statute provides that "under certain circumstances one who supplies material or labor to be used to enhance the value of the property shall have a lien upon the property to the extent of the goods and services provided." *Id.* (citing *Thirteenth St. Corp.*, 640 P.2d at 1133).

The Powells respond that the Bankruptcy Court's determination of damages is a finding of fact subject to the clearly erroneous standard of review. They also note that the lien that McCarty filed was not for the amount of damages he now claims ($51,254.76) but was for $35,264.76. The Powells argue that the Bankruptcy Court's findings regarding McCarty's damages were not clearly erroneous as it "determined that issue based upon sound principles derived from the Colorado Mechanic's Lien Act" but do not address *Brannan*.

I agree with the Powells. First, I note that although the determination of what requirements are necessary for the imposition of a Mechanic's Lien is a legal determination and, therefore, subject to *de novo* review, the determination of what specific design items met these requirements is a factual question subject to the clearly erroneous standard.

Second, although McCarty correctly cites *Brannan*, I do not think that this case compels the result for which McCarty argues. *Brannan's* language, although indicating "to be used to enhance the property", also indicates that the supplies must be "provided" to the property and that the lien is to "protect those who supply labor, materials, or services in order *to enhance the value or conditions* of another's property." *Id.* I read this to indicate that to be lienable items, the supplies provided by McCarty must have been actually used to enhance the property, or at least delivered to the property or the contractor. As such, I conclude that the Bankruptcy Court was correct in excluding from the damage calculation the items that he found were not installed on the Property or even delivered to the Property—*i.e.*, either McCarty still possessed the items or it was unclear who possessed the items.

Additionally, I note that McCarty does not provide any argument as to why the Bankruptcy Court's exclusion of items not contemplated under the sales contract was erroneous. Therefore, as it is the lien claimant's burden to prove entitlement to a lien, *see C & W*, 523 P.2d at 139 ("[I]t is incumbent upon the claimant to prove that he is entitled to the benefits of the statute." (citation omitted)), I conclude that it was not error for the Bankruptcy Court to exclude items not contemplated under the sales contract. Therefore, the Bankruptcy Court's determination of damages is affirmed.

2. <u>Treble Damages and Attorney's Fees and Costs</u>

Even though the Bankruptcy Court found damages, it did not award treble damages to McCarty. Relying on the case law,[7] the statutory language of the RSPS including the continued use of the word "may" rather than "shall", and purpose of the statute[8], the Bankruptcy Court first concluded that the RSPS provided for discretionary

---

[7] The Bankruptcy Court looked to three cases in making its determination that an award of treble damages was discretionary. First, the Bankruptcy Court noted that two bankruptcy opinions, both written by Howard R. Tallman, dealing with eligibility for Chapter 13 determined that RSPS was not discretionary. *See In re Krupka*, 317 B.R. 432, 439 (Bankr. D. Colo. 2004) ("[T]he Court does not read the language of Colo. Rev. Stat. § 18-4-405 as implying that an award of treble damages is discretionary."); *In re Salazar*, 348 B.R. 559, 572 (Bankr. D. Colo. 2006) (noting that the court in *Krupka* "did not interpret the language of Colo. Rev. Stat. § 18-4-405 as giving the trial court discretion on the question of whether to award treble damages or not"). However, the Bankruptcy Court determined that a later case, *In re Dorland*, 374 B.R. 765, 777–79 (Bankr. D. Colo. 2007) was correct in distinguishing *Krupka* and *Salazar* as dealing with the limited context of determining Chapter 13 eligibility.

[8] The Bankruptcy Court determined that the purpose of the RSPS was punitive, rather than remedial, and was concerned primarily with punishing those who buy and sell stolen property. *See In re the Marriage of Allen*, 724 P.2d 651, (Colo. 1986) ("[I]ts placement in the criminal code and its allowance of treble damages strongly suggest that section 18-4-405 was intended to serve primarily a punitive, rather than a remedial, purpose by depriving thieves and persons who buy and sell stolen goods of the immediate fruits of their criminal activities and by making such persons pay damages

awards of treble damages.[9] Then, the Bankruptcy Court determined that such an award was not appropriate in this case because the rationale underlying an award would not be furthered by awarding treble damages.

McCarty argues that the imposition of treble damages is not discretionary. The Powells respond that the award of treble damages is discretionary and that the Bankruptcy Court was correct in declining to award treble damages because the purpose and spirit of the RSPS does not justify such an award. I agree with McCarty.

The plain language of the statute compels such a result. It employs the word "may" rather than "shall" to grant the owner the permissive right to recover treble damages. The statutory language does not provide that the "court may award treble damages" or otherwise grant the court discretion to award treble damages.[10]

---

that by definition are three times greater than the amount necessary to compensate their victims.").

[9] Notably, the Bankruptcy Court declined to require McCarty to prove the elements of Colo. Rev. Stat. § 18-4-401, the statute defining theft, including criminal intent. See Dorland, 374 B.R. at 779–80 (requiring proof of intent to implicate the RSPS treble damages provision).

[10] "Courts should not presume that the legislature used language 'idly and with no intent that meant should be given to its language.'" People v. J.J.H., 17 P.3d 159, 162 (Colo. 2001) (quoting McMillin v. State, 405 P.2d 672, 674 (Colo. 1965)). The Colorado legislature has demonstrated its ability to grant the court discretion to award treble damages. Compare Colo. Rev. Stat. § 6-1-113 ("[A]ny person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article <u>shall be liable</u> in an amount equal to the sum of: (a) The greater of: (I) The amount of actual damages sustained; or (II) Five hundred dollars; or (III) Three times the amount of actual damages sustained, if it is established by clear and convincing evidence that such person engaged in bad faith conduct . . ."), and Colo. Rev. Stat. § 40-7.5-102 ("(2) In any civil action brought pursuant to this section, the utility <u>shall be entitled</u>, upon proof of willful or intentional bypassing, tampering, or unauthorized metering, to recover as damages three times the amount of the actual damages . . ."), and Colo. Rev. Stat. § 6-4-114 ("If the violation alleged and proved is

Furthermore, I note that the RSPS provides no standard by which a discretionary award is to be made nor is one articulated in the case law. As the Colorado legislature has determined that a victim of theft is entitled to treble damages without specifically providing discretionary authority to the courts, I conclude that it is inappropriate for a court to use its discretion in awarding treble damages to a victim covered by the statute. Therefore, I conclude that the Bankruptcy Court erred in determining that the award of treble damages was discretionary and the case should be remanded for a determination of damages pursuant to the RSPS. As discussed *infra*, however, such an award will depend on whether McCarty can prove the intent element of theft and whether there was a violation of the TFS in this case.

3. <u>Intent Element</u>

McCarty argues that he was not required to prove criminal intent in order to prevail on his claim for treble damages—a requirement that Bankruptcy Court did not impose on McCarty. (*See* B.R. Order at 11 n.13.) The Powells respond that McCarty was required to prove the elements of Colo. Rev. Stat. § 18-4-401 to obtain treble damages citing to two Colorado Supreme Court cases dealing with criminal prosecutions under the RSPS. *See People v. Mendro*, 731 P.2d 704, 706 (Colo. 1987); *People v. Piskula*, 595 P.2d 219, 221 (Colo. 1979). I agree with the Powells.

Even though the statutory language appears to be unambiguous that a violation

---

determined by the court to be a per se violation of this article, such person <u>may recover</u> three times the actual damages sustained by such person."), *with* Colo. Rev. Stat. § 12-61-203.5 ("The prevailing party in any such action shall be entitled to actual damages and, in addition, <u>the court may award </u>an amount up to three times the amount of actual damages sustained as a result of any such violation plus reasonable attorney fees.").

of the TFS constitutes theft,[11] the Colorado Supreme Court has ruled that the requirements of section 18-4-401 are necessary to prosecute someone under the RSPS.  In *Mendro*, the Colorado Supreme Court held that "[a] prosecution for a violation of section 38-22-127 must be prosecuted under section 18-4-401.  In order to convict, the prosecution must prove each of the elements of the crime of theft as set out in section 18-4-401, including the requisite intent."  731 P.2d at 706 (internal citations omitted)); *accord Piskula*, 595 P.2d at 221.  The Bankruptcy Court has also indicated that all the requirements of section 18-4-401 must be met before treble damages are available under section 18-4-405.  *See In re Dorland*, 374 B.R. at 779–80; *In re Byler*, Case No. 06-18347 HRT, at 3–5.  I agree that the treble damages award under the TFS must be based on the definition of theft as contained in the theft statute, Colo. Rev. Stat. § 18-4-401, which requires a showing of intent.  Such a limitation on the imposition of treble damages ensures that only those who act intentionally are subjected to the harsh punishment of treble damages.  Therefore, on remand, the Bankruptcy Court must determine whether McCarty is able to demonstrate the Powells' intent to deprive him of the materials, or value thereof, that he purchased for the Property.  *See* Colo. Rev. Stat. § 18-4-401(1)(a).

4. <u>Violation of the Trust Fund Statute</u>

After a review of the facts of this case, I am unconvinced that there was a violation of the TFS in this case.  The TFS states that "[a]ll *funds disbursed to any contractor* . . . shall be held in trust for the payment of the subcontractors, laborer or

---

[11] This is what the Bankruptcy Court relied upon.

material suppliers, or laborers. . . ." Colo. Rev. Stat. § 38-22-127. There is nothing in the facts that I am presented with to indicate what, if any, funds were actually disbursed to the Powells such that those funds were required to be held in trust for the benefit of suppliers. This is not the common scenario where the contractor is paid funds by the owner but fails to pay the subcontractors, suppliers, etc. from the funds. Therefore, on remand, the Bankruptcy Court shall specifically address whether the TFS has been violated in this case.

5.  <u>Appellees' Motion to Dismiss Appeal as Moot (Docket No. 31)</u>

On August 27, 2008, the Powells filed a motion to dismiss the appeal as moot (Docket No. 31) because McCarty entered into an agreement with Guaranty Bank, the holder of the first priority lien against the Property, that released McCarty's lien on the Property. Apparently, while McCarty was pursuing his claims against the Powells in this bankruptcy court adversary proceeding, he was also pursuing his claims against the Powells and various other defendants including the first priority lien holder, Guaranty Bank; C. Powell's father, Claude Powell; and Homes in state court. Allegedly, Guaranty entered into an agreement with McCarty in which Guaranty paid $43,500 to McCarty and McCarty released his lien on the Property and assigned the lien to Guaranty.[12] Notably, the agreement included a clause stating that:

> This agreement does not release any claims pending against Christopher and Tracy Powell in the United State Bankruptcy Court for the District of Colorado and that he specifically retains any and all claims arising from his mechanic's lien for treble damages and attorney fees under the "Trust Fund

---

[12] Near the same time, Claude Powell entered into an agreement to purchase Guaranty's Note, Deed of Trust, and all other rights obtained by Guaranty as a result of" the agreement with McCarty.

> Statute" arising from the Colorado mechanic's lien law and said assignment referred to in Paragraph 2 specifically excepts those claims.

The parties indicate that the settlement amount was paid to McCarty on or about the same day that the agreement was signed. Although I do not think that payment of the settlement amount renders this appeal moot, I do conclude that such payment should be addressed by the Bankruptcy Court on remand. The Bankruptcy Court should have, and should have had, all relevant facts before it to make an informed decision. Therefore, on remand, the Bankruptcy Court shall be directed to consider the effect, if any, that McCarty's receipt of the settlement has on this adversarial proceeding.

## Conclusion

After a review of the Bankruptcy Court's decision and the relevant case law, I conclude that the Bankruptcy Court's determination of the amount of damages that McCarty suffered should be affirmed. However, I conclude that the Bankruptcy Court erred in determining that it had discretion to award treble damages under Colo. Rev. Stat. § 14-4-405 and therefore reverse that portion of the decision and remand the case for further proceedings consistent with this opinion.

DATED at Denver, Colorado, on September 30, 2008.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge